1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                   EASTERN DISTRICT OF WASHINGTON

8
UNITED STATES OF AMERICA,        )
9                                )
                    Plaintiff,   )   NO. CV-04-3047-LRS
10                               )
    v.                           )
11                               )   ORDER GRANTING PLAINTIFF'S
                                 )   MOTION FOR SUMMARY JUDGMENT
12  CHARLES MC CLURE, aka CHUCK   )
MC CLURE,                        )
13                               )
                    Defendant.   )
14  _____ )

15      **BEFORE THE COURT** is Plaintiff's Motion for Summary Judgment.

16  (Ct. Rec. 14).  The Plaintiff, United States of America, is

17  represented by Frank Wilson.  The Defendant, Charles McClure, is

18  represented by Rex Tabler.  This motion was heard without oral

19  argument. After careful review of the pleadings, exhibits, and

20  declarations submitted by both parties, the Court finds that there

21  are no genuine issues of material fact, and Plaintiff is entitled

22  to summary judgment and injunctive relief as a matter of law for

23  the reasons set forth below.

24                         **I. BACKGROUND**

25      On April 29, 2004, the United States filed a lawsuit against

26  Charles McClure seeking to eject the Defendant from the National

27  Forest Lands upon which he had been residing without authority.

28  Complaint (Ct. Rec. 1) at ¶1.  The Complaint seeks the removal of

ORDER - 1

all structures, equipment, motor vehicles, and personal property
not necessary for or reasonably incident to, mineral exploration,
and for an injunction prohibiting Defendant from occupying or
conducting mining activities on National Forest System Lands
without authorization from the Forest Service. *Id.* Further, the
government seeks any monetary damages caused to the property
resulting from Mr. McClure's unauthorized occupancy. *Id.*

Defendant McClure and William Lancaster filed documents
locating the unpatented Clarissa mining claim on the National
Forest Lands on approximately January 2, 2000. Ct. Rec. 1 at ¶8.
Defendant's Answer (Ct. Rec. 4) at ¶8. It is undisputed that the
parcels are on federal land. Defendant sent the Forest Service a
letter expressing his intent to conduct mining activities on the
Clarissa mining claim. The Forest Service interpreted the letter
as a proposed plan of operation. Ct. Rec. 1 at ¶9; Ct. Rec. 4 at
¶9.

By letter dated June 28, 2001, the Forest Service informed
Defendant that his residential occupancy on the Clarissa mining
claim was not authorized. On October 10, 2001, Defendant submitted
a plan of operation, which included the use of a 23-foot trailer
on the mining claim for housing purposes and construction of a 12-
foot deck in front of the trailer, and a storage area. Ct. Rec. 1
at 13. *See also* Defendant's answer. (Ct. Rec.4). The Forest
Service did not approve residential occupancy or the building of
structures. See Ct. Rec. 4. The Forest Service sent Defendant
several letters (August 6, 2002, September 3, 2002, and October 4,
2002,)informing Defendant that his residential occupancy and
construction on the site were not approved, and that he was not in

ORDER - 2

compliance. Declaration of Richard Stearns (Ct. Rec. 16) at page
3. In a letter dated November 14, 2002, the Forest Service
approved the original operations and certain things asked for in
the October 2001 amended Plan of Operations. As the United States
emphasizes in its briefing, the approved activities were
specifically set out in the letter and did not include occupancy
of the site or the placement of a travel trailer or related
structures.[1] Nor did it include the myriad of personal property
that Plaintiff brought to the site.  Declaration of Richard Sterns
(Ct. Rec. 16) Attachment J23.  The letter also stated that the
approval expired on November 1, 2003. *Id; See also* Supplemental
Declaration of Richard Stearns, (Ct. Rec. 46-2)at ¶6. The record
also includes photographs of the site taken at various times. Ct.
Rec. 46-2, Exhibit C. The record is clear that Plaintiff has
removed some of his materials, including the travel trailer.
Declaration of Charles McClure (Ct. Rec. 42), Supplemental
Declaration of Richard Stearns, Ct. Rec. 46-2). According to
Defendant's own declaration, he has extensive personal property
located on national forest land, including, but *not* limited to
plastic swimming pools, blue plastic barrels, five gallon plastic
buckets, plastic pipe, metal roofing, metal boxes, motorized fans,
wood stove and stove pipe, shovels, gas and electric pumps,
generators wheel barrows, wash tubs, garbage cans, and metal
fencing. McClure Declaration (Ct. Rec. 42) at ¶14. *See* Ct. Rec. 42

---

[1]Despite the clear language of the letter, Defendant argues
the travel trailer was approved. That issue is moot as the parties
agree that the travel trailer has now been removed from federal
lands.

ORDER - 3

1  for a full recitation of the materials currently on national

2  forest lands.

## II. STANDARDS OF LAW

*A.  Summary Judgment Standard*

Under Rule 56c, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56c. In ruling on a motion for summary judgment the evidence of the non-movant must be believed, and all justifiable inferences must be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986).   However, when confronted with a motion for summary judgment, a party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party must do more than simply "show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Id.* at 587.  This court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.   There is no issue for trial "unless there is sufficient evidence favoring the non-moving party for a jury to

ORDER - 4

return a verdict for that party."  *Anderson*, 477 U.S. at 249.
Summary judgment must be granted "against a party who fails to
make a showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear
the burden of proof at trial."  *Celotex*, 477 U.S. at 322. To be
cognizable on summary judgment, evidence must be competent."
*Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028
(9th Cir. 2001)(quoting Fed. R. Civ. P. 56(e).

    *B. Standard for Injunctive Relief*

    In order to qualify for permanent injunctive relief,
Plaintiff must establish "irreparable injury and the inadequacy of
legal remedies."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312,
(1982) (citations omitted).  To meet this standard:

    [T]he plaintiff must establish actual success on the merits,
and that the balance of equities favors injunctive relief.  That
is, the plaintiff seeking an injunction must prove the plaintiff's
own case and adduce the requisite proof, by a preponderance of the
evidence, of the conditions and circumstances upon which the
plaintiff bases the right to and necessity for injunctive relief.
*Walters v. Reno,* 145 F.3d 1032, 1048 (9th Cir. 1998), cert.
denied, 119 S. Ct. 1140 (1999) (*quoting Orantes-Hernandez v.
Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990)).

    Injunctive relief "'is not a remedy which issues as of
course,' or 'to restrain an act the injurious consequences of
which are merely trifling.'"  *Weinberger*, 456 U.S. at 312
(citations omitted). "Injunctive relief is proper only if monetary
damages or other legal remedies will not compensate the plaintiffs
///

ORDER - 5

1   for their injuries."   *Walters*, 145 F.3d at 1048 (citations
2   omitted).

3                        **III. DISCUSSION:**

4        The Mining Law of 1872 provides The statutory right to mine
5   on public lands is long-standing:

6        [A]ll valuable mineral deposits in lands belonging to the
7   United States, both surveyed and unsurveyed, shall be free and
8   open to exploration and purchase, and the lands in which they are
9   found to occupation and purchase, by citizens of the United States
10  and those who have declared their intention to become such, under
11  regulations prescribed by law, and according to the local customs
12  or rules of miners in the several mining districts, so far as the
13  same are applicable and not inconsistent with the laws of the
14  United States. 30 U.S.C. § 22.  The 1872 Act also reserves to a
15  mineral claimant "the exclusive right of possession and enjoyment
16  of all surface included within the lines of their locations."  *Id.*
17  at § 26. *See also U.S. v. Good*, 257 F.Supp. 2d 1306, 1308 (D.
18  Colo. 2003).

19       However, this right is limited, as Congress has broad power
20  to regulate land within the public domain, *Kleppe v. New Mexico*,
21  426 U.S. 529, 538-39(1976), and a necessary ancillary to this
22  power is the authority to "protect (public lands) from trespass
23  and injury and to prescribe the conditions upon which others may
24  obtain rights . . . ." *Utah Power & Light Co. v. United States*,
25  243 U.S. 389, 405 (1917). Congress, in the exercise of this
26  authority, has enacted legislation reserving to the United States
27  the right to manage vegetative surface resources on an unpatented
28  claim and specifically stating that any mining claims " shall not

ORDER - 6

be used . . . for any purposes other than prospecting, mining or processing operations and uses reasonably incident thereto."  30 U.S.C. s 612 (1970). *See Converse v. Udall*, 399 F.2d 616, 617 (9th Cir. 1968), cert. denied, 393 U.S. 1025 (1969).  Explained a bit more succinctly, holders of valid mine mining claims have a property interest in federal lands, but the interest only allows uses of the land that are reasonably incident to mining.  30 U.S.C. section 612.; *see also Teller v. United States*, 113 F.273, 280-81 (8th Cir. 1901).[2]  "If a person's occupancy is not reasonably incident to mining, it is unlawful." *United States v. Allen*, 578 F.2d 236 (9th Cir. 1978).  "[T]he important interest in developing mineral resources on public lands under the mining law may come into conflict with the equally important interest in protecting our National Forests for future use." U.S. v. *Brunskill*, 792 F.2d 938, 939 (1986); *see also U.S. v. Good,* 257 F.Supp. 2d 1306 at 310.  Mr. McClure does not dispute that the "United States Forest Service is empowered by the Multiple Use Act to exercise certain regulatory controls."  Defendant's Motion in Opposition to Summary Judgment (Ct. Rec. 41) at 2.

The Forest Service has promulgated regulations for the purpose of setting "forth rules and procedures through which use of the surface of National Forest System lands in connection with operations authorized by the United States mining laws (30 U.S.C.

---

[2] The law is clear that federal lands may not be used for other purposes. *See e.g. United States v. Bagwell*, 961 F.2d 1450 (9th Cir.1992)(affirming the eviction of a mill site claimant holding under an unpatented claim where the site was used "primarily for residence and livestock purposes rather than mining or milling purposes")

[§§] 21-54), . . . shall be conducted so as to minimize adverse environmental impacts on National Forest System surface resources." 36 C.F.R. § 228.1.  *See also United States v. Brunskill*, 792 F.2d at 941.

36 C.F.R. § 228.4(a) provides that "a notice of intention to operate is required from any person proposing to conduct operations which might cause disturbance of surface resources. Such notice must be filed with the District Ranger having jurisdiction over the area where the proposed operations will occur.  Where the District Ranger determines that such operations will likely cause significant disturbance of surface resources, the operator shall submit a proposed plan of operations to the District Ranger."  *Id.*

It is well settled that mining activities likely to cause such disturbance cannot be carried on in the absence of an approved operating plan.  *See United States v. Goldfield Deep Mines Co. of Nevada*, 644 F.2d 1307 (9th Cir.1981), cert. denied, 455 U.S. 907, (1982).

Defendant contends that there are genuine issues of material fact which preclude summary judgment.  First, Defendant alleges that he moved his travel trailer from the site in early 2005. McClure Declaration (Ct. Rec. 42 at ¶14), and therefore, the issue is moot. (Ct. Rec. 42)  The government acknowledges that the travel trailer has been removed from the premises. (Ct. Rec. 46-2).  However, the analysis does not end with whether the Defendant's travel trailer is still on the land. According to Defendant's own declaration, he has extensive personal property located on national forest land, including, but not limited to

ORDER - 8

plastic swimming pools, blue plastic barrels, five gallon plastic buckets, plastic pipe, metal roofing, metal boxes, motorized fans, wood stove and stove pipe, shovels, gas and electric pumps, generators wheel barrows, wash tubs, garbage cans, and metal fencing. McClure Declaration (Ct. Rec. 42) at ¶14. Therefore, it is clear from the undisputed record that the issue is not moot.

Defendant further argues that if the Court finds that the issue is not moot, he is simply using the land in good faith, and that the materials he has on the property are "reasonably incident to mining." Ct. Rec. 41 at 4-8. Defendant cites to *United States v. Shumway*, 195 F.3d 1093 (9th Cir. 1999) to support his position. However, the case in Shumway is distinguishable from the case at bar. In *Shumway*, the Forest Service had significantly raised the Shumway's bond amount, and there was some question about whether the Forest Service had done so arbitrarily. Moreover, the Forest Service stated that the Shumways could no longer stay on the land, when in a previous operating plan which had been approved, the Forest Service required someone to stay on the land and supervise mining operations for safety reasons. These facts, along with others in the record, created genuine issues of material fact, which made summary judgment inappropriate in that instance. It is interesting to note that in dicta, however, the *Shumway* Court opined that an injunction would be a more appropriate remedy. *Id* at 1108.

Unlike in the *Shumway* case, there are no such factual issues in Defendant McClure's case, which would preclude Plaintiff's summary judgment. Defendant further argues that the issue of whether his extensive materials on the land are incident to mining

ORDER - 9

1  creates a genuine issue of material fact for trial. While the

2  record before the Court suggests that the materials are not

3  reasonably incident to mining, the Court need not reach this issue

4  when deciding the  motion for summary judgment.   In *U.S. v.*

5  *Brunskill*, the Ninth Circuit affirmed the lower court's decision

6  that the Defendant did not have an approved plan of operation, and

7  consequently, the Forest Service could properly direct Defendant

8  to remove the structures from federal land.   *Id* at 941.

9      In Mr. McClure's case, the Defendant was informed that

10 pursuant to federal regulations any mining activity that "might

11 cause significant surface resource disturbance must be conducted

12 according to a Plan of Operations approved by the Forest Officer."

13 (Ct. Rec. 16) Attachment J6 to Exhibit A of Stearns Declaration.

14 In addition, Ct. Rec. 16 Attachment J7 includes Mr. McClure's

15 response with a copy of the Attachment J6 attached, which

16 demonstrates that Mr. McClure received the correspondence.  As the

17 government points out in its Motion for Summary Judgment, Mr.

18 McClure was also sent another letter which enclosed a copy of the

19 regulation requiring an approved Plan of Operation if surface

20 resources would be significantly disturbed.  *Id* at Attachment J17.

21 In addition, Defendant was sent numerous letters telling him that

22 he was not in compliance, and that his activities were

23 unauthorized.  *See* Plaintiff's Statement of Material Facts (Ct.

24 Rec. 17) at ¶ 6-14.  As demonstrated by the record, particularly

25 the Stearns Declaration (Ct. Rec. 16), the Supplemental Stearns

26 Declaration (Ct. Rec. 46-2), and the various photographs of the

27 property taken throughout the years. (Ct. Rec. 46-2, Exhibit C),

28 it appears that the District Ranger properly determined that Mr.

ORDER - 10

McClure is causing significant disturbance to surface resources and, as the government contends, must have an approved Plan of Operations to conduct any mining activities on the claim.

The next question is whether Mr. McClure had such an approved plan in place. The record is clear that Mr. McClure's approved Plan of Operations expired on November 1, 2003. Because there is no approved Plan of Operations currently in effect, the Defendant does not have authority to have those materials on federal lands. *See Brunskill*, *supra.*

For the aforementioned reasons, it is **HEREBY ORDERED:**

Plaintiff's Motion for Summary Judgment (**Ct. Rec. 14**) is **GRANTED**. Furthermore:

1.   Defendant is ordered to terminate his residential occupancy, if any, of the federal lands within **thirty** days of the entry of the order of this Court.

2.   Defendant is ordered to remove from the subject lands all personal property, including but not limited to motor vehicles, structures, equipment and chemicals and to restore the subject lands to their natural state within **thirty** days of the entry of the order of this Court; or in the alternative, to pay the Plaintiff United States the costs of taking such actions;

3.   The Plaintiff United States is permitted to take possession of all personal property, including but not limited to motor vehicles, structures, equipment and chemicals not removed by the Defendant within **thirty** days of the date this order is entered, and dispose of such personal property without further order of this Court, notice, or administrative action.

///

ORDER - 11

1    4.   Defendant is hereby ejected from the federal lands

2 heretofore occupied by him and officers of the Plaintiff United

3 States, including the U.S. Marshals Service, and Forest Service

4 law enforcement officials may remove Defendant therefrom if

5 Defendant fails to vacate his occupancy within the time ordered by

6 the Court.

7    5.   The Defendant is **HEREBY ENJOINED** from occupying and using

8 under the color of the United States mining laws, the federal

9 lands at issue in this case, unless hereafter specifically

10 authorized in writing by the United States under an Approved Plan

11 of Operations.  Moreover, Defendant is further prohibited from

12 occupying or using other federal lands without first complying

13 with all applicable federal laws and regulations.

14    6.   Reimbursement to the United States for costs incurred in

15 restoring the federal lands to their natural state if the

16 Defendant fails to timely abide by this Court's order may be

17 pursued in the form of a motion, or in a separate action if

18 necessary to comply with applicable law.

19    **IT IS SO ORDERED**.  The Clerk is hereby directed to file this

20 Order, enter Judgment in favor of the Plaintiff, and furnish

21 copies to counsel.

22    **DATED** this 27th day of September, 2006.

23

24                          *s/Lonny R. Suko*
                       _____
25                          LONNY R. SUKO
                       UNITED STATES DISTRICT JUDGE
26

27

28

ORDER - 12